THE COMMERCIAL CABLE COMPANY, Plaintiff, *v.* THE PHILIPP BAUER COMPANY, Defendant.

(Municipal Court of the City of New York, July, 1917.)

Telegraph companies — action by, to recover for services — evidence — cable service — contracts.

> Under normal conditions, and as between sender and addressee, when a domestic telegram has been delivered to a telegraph company and accepted for transmission there is a presumption of fact that it has been duly forwarded and received by the addressee. This presumption, however, does not apply in an action by a telegraph company to recover for

services in transmitting a message as its effect would be to cast upon the sender the burden of proving non-performance of the contract which forms the basis of the action.

As between sender and addressee a presumption as to the delivery of a cablegram would not apply because of the war conditions in Europe.

Plaintiff, engaged in transmitting cablegrams between New York and a point in Ireland, upon receipt of a cablegram transmitted to Ireland forwarded it by another cable company to its destination. *Held,* that senders of cablegrams to European points at the present time are chargeable with knowledge of the disturbed and unsettled conditions affecting cable service and that therefore any contracts by plaintiff for cable transmission to Europe amounted merely to engagements that it would receive messages in the regular course, and transmit them through its operator at New York city over its cable running to Ireland.

Plaintiff not having assumed any greater obligation, it had established a cause of action to recover for services by proof of the transmission of messages over its cable to Ireland.

ACTION to recover for toll service in transmitting cablegrams.

William W. Cook, for plaintiff.

Esselstyn & Haughwout, for defendant.

PRINCE, J. This is a case of interest and of novel impression.

The plaintiff corporation, engaged in the business of transmitting cables between New York city and points in Europe, seeks to recover from the defendant its usual tolls for transmitting twenty-one cablegrams for the defendant between New York city and various foreign points during January, February and March, 1916.

Upon the trial the defendant conceded that six of these cablegrams were transmitted, delivered and

received by their addressees. With respect to the remaining fifteen cablegrams the defendant has interposed its denial, putting the plaintiff to its proof as to their transmission and delivery.

It appears that the plaintiff, in connection with its business, controls a cable which extended between New York and a point in Ireland; that upon the receipt of a cablegram transmitted to Ireland the same is forwarded by another cable company to its destination. With respect to the fifteen disputed cablegrams, the plaintiff established that its operators in New York city dispatched the messages over their cable which extended to Ireland. Presumably the same course was pursued as to the six cablegrams concededly received by the addressees. There was no further proof on the part of the plaintiff that the messages had been received in Ireland, or had been transmitted through the forwarding company, or had in fact been received at their destination.

The question of law presented for determination is whether the plaintiff established its cause of action with respect to the fifteen cablegrams in dispute. Upon the conclusion of the trial it was conceded by counsel that the question for determination by the court was whether the presumption of delivery which concededly exists in cases of letters sent by post applies to the cables transmitted by the plaintiff company. After more mature consideration I have concluded that that question is not determinative, in fact has no application to the present action.

It undoubtedly is the law that under *normal conditions* and as between sender and addressee, when a domestic telegram has been delivered to a telegraph company and accepted for transmission by the operator of the company, there is a presumption of fact that the telegram has been duly forwarded and

received by the addressee. The basis for this presumption rests upon the fact that the telegraph companies exercise a *quasi* public function and are charged with a public duty, and in many respects are regulated by public law, and particularly because experience has taught that under normal conditions the great bulk of telegrams sent are actually received by the persons to whom they are directed. But it is to be borne in mind that this presumption has only been applied in controversies wherein the telegraph company had neither pecuniary nor other interest. In a controversy between strangers to the telegraph company, it is presumed that the telegraph company had performed the duty with which it is charged by law and which it has assumed for one of the parties.

No case has been called to my attention by counsel, nor has my own research disclosed any instance, in which the presumption was extended to an action brought by the telegraph company to recover charges for transmitting messages, and I am satisfied that the presumption of delivery referred to cannot be indulged in in a case in which the telegraph company is interested to recover for its service in transmitting the very message which it asks the court to presume that it transmitted and delivered.

Were the presumption to apply in a case like the one at bar, the effect would be to cast upon the sender of the message the burden of proving non-performance of the contract which forms the basis of the action. There is no principle of law which would warrant an exemption of a telegraph company from the onus of proving that it had performed the service for the value of which it sues. Furthermore, I am satisfied that were this a controversy between sender and sendee there would be no presumption of delivery, upon the facts as presented. A presumption

is a substitute for proof and exists because common experience has proved that upon the facts presented a certain result usually follows. A presumption can never exist in contradiction of the results of experience.

It needs no proof that the war in Europe has operated to unsettle, delay and oft render impossible telegraphic and cable service. Reports of long delayed and non-delivered cables are of constant occurrence, and to presume that every cable which is sent is received would be imputing truth to falsity. Therefore I have concluded that the presumption of delivery as to domestic telegrams has no application to cables transmitted to foreign points under the present war conditions.

As before indicated, however, the question of presumption of delivery of telegrams has no pertinency to the case at bar, because the cable company is a party to and interested in the action.

For the purpose of determining this action it is necessary to ascertain the contract of the parties in the light of conditions as they existed at the time it was made. What did the cable company undertake to do? Persons sending cables to European points at the present time are charged with knowledge of the disturbing, unsettled and irregular conditions affecting cable service due to the war, and must be presumed to know of the difficulties, and often impossibility, of delivery which confronts the cable company. The risk of delayed service and impossible delivery is, in my judgment, an implied term of the contract and is assumed by the sender of the message. As I view it, the contract of the plaintiff company, under present conditions, merely was that it will receive the message and in the regular course transmit it through its operators at New York city over its cable running

Appellate Term, First Department, July, 1917. [Vol. 100.

to Ireland, leaving it to the forwarding cable or telegraph company to transmit the message to its destination, if possible. In my opinion no further obligation was assumed by the plaintiff company. Any other rule or greater obligation upon the plaintiff would be inconsistent with every-day experience and beyond reasonable requirement.

In the light of the obligation assumed by the plaintiff it must be apparent that the plaintiff established its cause of action, since it proved by its operators the transmission of the messages in question over its cable to Ireland, and I accordingly direct judgment for the plaintiff in the sum of $370.81.

Judgment accordingly.