ANHEUSER-BUSCH ICE & COLD STORAGE CO., INC., Appellant, *v.* PATRICK S. REYNOLDS, Respondent.

First Department, June 24, 1927.

Sales — action to recover purchase price — defense that plaintiff breached contract requiring it not to permit competition in defendant's territory and to do certain advertising — that part of agreement for purchase of goods was independent of part alleged to have been breached — violation of said provision not bar to action for purchase price — defendant having continued under contract after breach is estopped — new trial granted.

The plaintiff brought this action to recover the purchase price of goods sold and delivered to the defendant. The defendant interposed as a complete defense

that the plaintiff violated its agreement not to permit competition within defendant's territory and its agreement to do a certain amount of advertising to aid the defendant in selling the goods. That part of the agreement relating to the purchase of the goods was distinct and independent from the covenants as to competition and advertising and a violation of those covenants does not constitute a bar to the right of the plaintiff to recover the purchase price of the goods.

Furthermore, the defendant continued to act under the contract after the plaintiff had violated its terms and he is, therefore, estopped from setting up that violation as a defense to the action; defendant could not allow the contract to remain in force, take the benefits to be derived therefrom, and then disclaim liability to pay for the goods purchased.

Inasmuch as the case was submitted to the jury upon a theory favorable to the defendant which rendered it unnecessary for him to prove the amount of his damage arising from the breach of the covenants, a new trial is granted.

APPEAL by the plaintiff, Anheuser-Busch Ice & Cold Storage Co., Inc., from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 6th day of October, 1925, upon the verdict of a jury, and also from an order entered in said clerk's office on the 27th day of October, 1925, denying plaintiff's motion for a new trial made upon the minutes.

*Albert Blumenstiel* of counsel [*Ralph K. Jacobs* with him on the brief; *Blumenstiel & Blumenstiel*, attorneys], for the appellant.

*Charles A. Winter* of counsel [*Hartman, Sheridan & Tekulsky*, attorneys], for the respondent.

FINCH, J. The question involved upon this appeal is whether a defendant may avoid payment for goods sold and delivered under a contract by proof of a breach by the plaintiff of separate and distinct covenants of said contract.

Plaintiff sued to recover a balance of $2,170.30, alleged to be due for goods sold and delivered to the defendant at prices agreed upon. In connection with this balance, the defendant put in issue only certain credits which were stated in the complaint to have been allowed the defendant in computing the amount claimed. The defendant then alleged, as a so-called separate defense and counterclaim, that the parties to this action had entered into a contract whereby the defendant was to be the exclusive selling agent of the plaintiff's product in certain territory and the plaintiff agreed to aid the defendant in the sale of such product by various forms of advertising and to give the defendant the benefit of the co-operation and assistance of its representatives. The defendant alleged that the plaintiff failed to advertise, as agreed, and also allowed other persons to sell its product in the defendant's territory,

First Department, June, 1927.                    [Vol. 221

all to defendant's damage in an amount greater than plaintiff's claim.   An additional counterclaim was also set up for the return of empty bottles, on account of which the defendant claimed to be entitled to a credit.   Upon the trial the defendant assumed the affirmative in support of its counterclaims, but subsequently admitted it was unable to establish the same.   The defendant also failed to prove that the credits allowed to the defendant were incorrect or that he was entitled to be credited any greater amount than that which the plaintiff was willing to concede.   The defendant urged, however, that inasmuch as the goods in question had been sold and delivered under a contract, it was incumbent upon the plaintiff, before it would be entitled to recover the price of such goods, to show performance on its part of all the conditions of the contract between the parties by it to be performed.   The case was submitted to the jury in accordance with this theory, namely, that the plaintiff could not recover without first showing that it had duly performed the duties under the contract devolving upon it. Upon this submission the jury found in favor of the defendant. The judgment must be reversed for the following reasons:

Assuming the plaintiff to have breached the contract in the respects claimed by the defendant, the question still would remain whether the provisions breached constituted conditions precedent to, or were so material as to prevent, the plaintiff's right to recover the value of the goods sold and delivered to the defendant, or, on the other hand, only gave rise to severable breaches which would permit defendant to counterclaim for his damages.   As was said by Judge DENIO in *Tipton* v. *Feitner* (20 N. Y. 423, 425): " It is not universally true that a party to a contract who has himself failed to perform some of its provisions is thereby precluded from recovering damages for a breach committed by the other party. The question in such cases is, whether the stipulation which the plaintiff has failed to observe was a condition precedent to the performance by the defendant, and whether it is of that character or not depends upon the general scope and intention of the agreement, to be gathered from its several provisions.   *   *   * " In the case at bar the parties do not contend that whether the contract was entire or divisible is other than as appears upon the face of the writing which constitutes the contract.   This question is, therefore, to be determined by the court.   As was said in *Tipton* v. *Feitner* (*supra*): " But whether the contract is indivisible or not, the terms of the contract being given, is a question of law."

The terms of the contract in question are contained in letters between the parties, by which the defendant was given certain exclusive territory in which to sell the plaintiff's product.   The

terms of the contract, in so far as material, are contained in the plaintiff's letter of February 18, 1921, reading in part as follows:

" A distributor would be requested to purchase in car lots, the minimum at this time being 520 cases, our terms usually being net arrival draft, but in cases where a dealer can show a high credit rating, we would extend credit to the extent of one car load, in no case for a longer period than 30 days from date of our invoice, likewise net.

" Our price to the dealer in car lots would be $3.27 per case of two dozen bottles, f. o. b. St. Louis, a refund of $1.50 for each case and two dozen bottles being made on their return to St. Louis. The rate of freight, including war tax, to Rockaway is approximately 45¢ per case which would make the net cost f. o. b. Rockaway, after allowing $1.50 for the case and bottles of $2.22 per case. It is expected of the dealer that he will confine his price to $4.50 per case when selling to retailers, with a refund of $1.50 per case of two dozen bottles being made on the return of empties; but in selling to the family trade, it will be good business on the part of the dealer to conform as closely as possible to the price at which the retailer sells, the same is true when selling to the trade on your premises, either over the bar or in your restaurant. By so doing perfect harmony should prevail between the dealer and the retailer, and no discord would arise through price cutting or competition. * * *

" It is expected of the dealer in taking over the territory that the aim be 100% distribution; the dealer providing at his expense facilities for warehousing and likewise trucking equipment, and sales force, should business require such a force. Assistance in the form of advertising through the mediums of bill boards and newspapers, will, of course, be resorted to and wherever in your territory such advertising is displayed, your name as dealer will show thereon. The same is true of circulars and other small literature which will be gotten out from time to time, and you can feel assured that you will receive your share of advertising. From time to time our St. Louis and New York representatives will visit your territory and render as much assistance as is possible."

From the foregoing it appears that the defendant agreed to purchase and pay for the plaintiff's goods upon presentation of draft, with a thirty-day credit under certain circumstances. There is nothing in the contract to make the plaintiff's right to recover payment for the goods delivered contingent upon the performance by the plaintiff of any terms of the contract other than the delivery of the goods. In this connection it is to be noted that the plaintiff

12

did not undertake to perform any definite amount of advertising or assistance at any particular time, and the matter appears to have been left largely to the discretion of the plaintiff. Both the matters of advertising and assistance and the covenant to refrain from selling goods to others in the territory granted to the defendant extended throughout the life of the contract (which was for no definite period), whereas the defendant was obligated to pay for the goods delivered either upon delivery or within thirty days. Upon delivery, therefore, of the merchandise, the contract became executed to that extent and the plaintiff entitled to payment subject to any counterclaim which the defendant might be able to establish. It would be unreasonable so to construe the contract that the defendant would be relieved from the obligation to pay for goods delivered by showing any breach of the aforesaid conditions on the part of the plaintiff, irrespective of whether such breach occasioned any substantial damage to the defendant. As was said by Mr. Justice Woodward in *Kinney* v. *McBride & Co.* (88 App. Div. 92): " The covenant of the plaintiff's assignors not to engage in business in competition with the defendant for a period of five years was not a condition precedent to the payment of the purchase price of the goods; it was an independent covenant, extending beyond the time limited for the payment of the money, and while its breach might give the defendant the right, proceeding in the manner prescribed by law, to rescind the contract, this could only be done by the defendant restoring the goods mentioned in the bill of sale, and placing the parties upon the same footing which they occupied at the time of entering into the contract. (*Cox* v. *Stokes,* 156 N. Y. 491, 507.) The law, no doubt, intends to discourage men from breaking their engagements, but this is not generally accomplished by visiting them with a penalty beyond the damages sustained by the party injured. (*Tipton* v. *Feitner, supra,* 427.)  *  *  *  All of the requirements of justice would be met by an action or counterclaim for the damages resulting from a breach of the covenant, and this must be deemed to have been the extent to which the contracting parties assented."

There is further reason why the defendant may not defeat the plaintiff's right to recover payment for the goods delivered. The defendant submitted to the plaintiff a statement of certain grounds for dissatisfaction with plaintiff's performance under the contract, including the plaintiff's advertising campaign. The plaintiff, in an endeavor to mollify the defendant, made the latter certain concessions. The defendant did not elect to cancel the contract but accepted the concessions and continued to order and receive goods from the plaintiff. The defendant, upon discovery

of such breach of contract, had the right to terminate the contract in so far as it remained executory and to recover any damages sustained by him.   He could not allow the contract to remain in force, take the benefit of goods ordered thereunder and disclaim liability to pay the price of the goods so ordered.   In *Rosenthal P. Co.* v. *Nat. Folding B. & P. Co.* (226 N. Y. 313) it was held that a defendant, having kept alive the contract and secured the results, cannot maintain that it is not subject to its obligations and liabilities for the reason that the other party had renounced it.   Judge COLLIN (at p. 325) said: " By the terms of the contract the right of the defendant to manufacture and sell the boxes and its obligation to pay the rated or minimum royalty were conditioned upon the agreements of Seligstein and his performance of them. Seligstein's action gave it the option to cease performance and recover damages.   It did not give it the option to manufacture and sell and not pay the royalties.   It manufactured and sold, and thus nullified the conditional quality of Seligstein's promises. Having kept alive the contract and secured the results, it cannot maintain that it is not subject to its obligations and liabilities, for the reason that Seligstein had renounced it.   Its remedy is the recovery, in counterclaim or action, of the damages, if any, Seligstein's action or non-performance caused it."

As noted, the defendant upon the trial conceded his inability to prove the amount of his damage under his counterclaim.   Ordinarily this would result in the direction by this court of a judgment for the plaintiff for the amount of its claim, less an additional credit of $200, to which the plaintiff conceded the defendant was entitled.   Inasmuch, however, as the case was submitted to the jury upon a theory favorable to the defendant and which rendered it unnecessary for the latter to rely upon proof of the amount of his damage, a new trial will be ordered in order that the defendant may be afforded an opportunity to establish his damage.

The judgment and order appealed from are accordingly reversed and a new trial ordered, with costs to the appellant to abide the event.

MERRELL, McAVOY, MARTIN and PROSKAUER, JJ., concur.

Judgment and order reversed and a new trial ordered, with costs to the appellant to abide the event.